**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION**

**CIVIL CASE NO. 2:09cv45**

| | |
|---|---|
| **COUNTY OF JACKSON, a body politic and corporate created and existing under the laws of North Carolina,** )<br>)<br>)<br>)<br>**Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**DUKE ENERGY CAROLINAS, LLC, a limited liability company organized and existing under the laws of North Carolina, and THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as Successor Trustee,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>**Defendants.** )<br>) | **O R D E R** |

**THIS MATTER** is before the Court on Duke Energy Carolinas' (Duke) (1) Motion to Dismiss all Claims by Jackson County (County) for Lack of Subject Matter Jurisdiction; and (2) Motion for Summary Judgment with Respect to its First Claim for Relief (Declaratory Judgment) [Doc. 7] and the Plaintiff's Motion to Remand [Doc. 11].

1

## PROCEDURAL HISTORY

On August 18, 2009, Duke removed this action filed against it by the County in Jackson County Superior Court.  [Doc. 1].  At the time of removal, The Bank of New York Mellon Trust Company, N.A. (Bank) had not yet been served.  On September 8, 2009, the Bank filed consent to the removal although it still had not been served. [Doc. 5].

In the complaint, the County asks for "a declaration of the respective rights and obligations of the parties under various statutory provisions relating to the exercise of the power of eminent domain by the County" to acquire the Dillsboro Dam and Powerhouse parcel owned by Duke. [Doc. 1-2, at 2].  As relief, the County seeks (1) a declaration that it may exercise the power of eminent domain to condemn the property; and (2) condemnation of the property.

In its Notice of Removal, Duke asserted federal question jurisdiction pursuant to the Federal Power Act (FPA), 16 U.S.C. §§791, *et. seq*., which, it argues, preempts state and local condemnation law concerning hydroelectric licensing.  After removal, Duke also filed an Answer, Defenses and Counterclaims. [Doc. 6].  In that pleading, Duke asserted a counterclaim

for a declaratory judgment that the County does not have the authority (1) to condemn the property at issue, (2) to require Duke to seek local permits concerning operation and removal of the project or (3) to interfere with that operation and removal.[1]  [Doc. 6, at 22].

In support of removal, Duke filed the affidavit of Jeffrey Lineberger, director of hydro strategy and licensing for Duke. [Doc. 2].  Lineberger explained that the Dillsboro Dam and Powerhouse are actually part of the Dillsboro Hydroelectric Project (Dillsboro Project) located on the Tuckasegee River in Jackson County and consists of a concrete masonry dam (the Dillsboro Dam) and an associated electric power generating facility (the Dillsboro Powerhouse). [Id., at 2-3].  The project was operated by Duke pursuant to a license issued by the Federal Energy Regulatory Commission (FERC). [Id.].  In May 2004, Duke filed an application with FERC to surrender the license but continued to maintain the project pending the completion of the surrender process under the regulatory supervision of FERC. [Id.].  The County intervened in the surrender proceedings before FERC claiming that the project should be re-licensed to it or that title should be transferred to the County. [Id.].

---

[1]Another counterclaim was asserted but Duke has since conceded that relief as to that claim is not ripe. [Doc. 7].

In July 2007, FERC issued an order approving the surrender of the Dillsboro Project. [Id.].  In August 2007, the County filed a request with FERC for a rehearing of that order. [Id., at 4].  FERC rejected the request for a rehearing and upheld the Surrender Order. [Id.].  The County then filed a petition for judicial review with the United States Court of Appeals for the District of Columbia (D.C. Circuit). [Id.].  That petition remains pending. [Id.].

As a result of these undisputed facts contained within the Lineberger Affidavit, the Court issued an Order on September 2, 2009 which required the parties to address the issue of subject matter jurisdiction in view of the proceedings pending before the D.C. Circuit.[2] [Doc. 4].  See, Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 196 (4th Cir. 2008) (District courts have an independent obligation to address subject matter jurisdiction *sua sponte*.).  In response, both Duke and the County acknowledged that this Court does not have subject matter jurisdiction over the County's claims. [Doc. 9, Doc. 13].  On the same day that each party filed response to the Court's Order, each also filed the pending motions.

---

[2]At the time the Order issued, the Bank still had not been served.  The Bank was served on October 14, 2009 and therefore did not file response to the Order. [Doc. 22].

**STANDARD OF REVIEW**

The party seeking removal of an action from state court bears the burden of showing federal subject matter jurisdiction. Maryland Stadium Authority v. Ellerbe Becket, Inc., 407 F.3d 255, 260 (4th Cir. 2005), *citing* Mulcahey v. Columbia Organic Chemicals Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994) (other citations omitted). "Removal jurisdiction is not a favored construction; [the Fourth Circuit] construe[s] it strictly in light of the federalism concerns inherent in that form of federal jurisdiction." In re Blackwater Security Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006), *certiorari denied* 549 U.S. 1260, 127 S.Ct. 1381, 167 L.Ed.2d 174 (2007) (citations omitted).

> Under what has become known as the well-pleaded complaint rule, §1331 federal question jurisdiction is limited to actions in which the plaintiff's well-pleaded complaint raises an issue of federal law; actions in which defendants merely claim a substantive federal defense to a state-law claim do not raise a federal question. In other words, a defendant may not defend his way into federal court because a federal defense does not create a federal question under §1331.

Id., at 584 (citations omitted).

"Here, [Duke] does not dispute that plaintiff's complaint raises only state law causes of action. [Duke] argues, however, that the statutory and regulatory scheme of the [FPA] completely preempts plaintiff's state law claims." Nordan v. Blackwater Security Consulting, LLC, 382 F.Supp.2d 801,

807 (E.D.N.C. 2005), *affirmed* In re Blackwater, 460 F.3d 576.

Nonetheless, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a case removed from state court], the case *shall* be remanded." 28 U.S.C. §1447(c) (emphasis provided). An order remanding a case for lack of subject matter jurisdiction is not reviewable on appeal. 28 U.S.C. §1447(d); Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d at 196 ("[A] remand order based on a lack of subject matter jurisdiction, whether *sua sponte* or not, falls within the scope of §1447(c) and therefore is not reviewable by a court of appeals."). Despite this statutory directive, or perhaps because of it, Duke argues that dismissal of the County's claims is warranted instead of remand to state court. In re Blackwater, 460 F.3d at 581-82 ("Although Blackwater encouraged the district court to remedy its lack of jurisdiction by dismissing the case rather than remanding it, the district court ... concluded that it lacked the authority to dismiss. ... The district court thus remanded the case to state court without reaching the merits of Blackwater's motion to dismiss.").

Duke therefore argues that removal was proper based on complete federal preemption but then asserts that the County's state law claims must be dismissed for lack of subject matter jurisdiction. This argument is based

on the appellate proceedings pending before the United States Court of Appeals for the District of Columbia Circuit (D.C. Circuit).

For its part, the County as Plaintiff concedes that this Court has no subject matter jurisdiction over its claims and argues that jurisdiction does not exist over Duke's counterclaim.

> Duke has failed to exhaust administrative remedies as to its purported federal preemption defense and counterclaim. Thus the Court does not have subject matter jurisdiction over these claims[.] ... Duke's federal preemption defense is based on [its] allegation that the FERC Surrender Order preempts state condemnation law. The FERC Surrender Order is on appeal and is pending before the D.C Circuit Court of Appeals[.]

[Doc. 13, at 1-2]. Thus, the County argues that the case should not be dismissed but remanded to state court.

Although Duke concedes this Court has no subject matter jurisdiction over the County's claims due to the pending proceedings in the D.C. Circuit, it argues that this Court does have subject matter jurisdiction over its counterclaim and has moved for summary judgment as to that claim. The Court must first consider the issue of subject matter jurisdiction. In re Blackwater, 460 F.3d at 589-90. If there is no subject matter jurisdiction, "§1447(c) directs that the case 'shall be remanded.'" Id.

# FACTUAL BACKGROUND[3]

On July 19, 2007, FERC issued an Order which accepted Duke's surrender of its license to operate the Dillsboro Project and dismissed Duke's application for a subsequent license for the project. [Doc. 2-3, at 1]. FERC identified the Project as including the Dillsboro Dam, the Dillsboro Powerhouse, a fifteen acre reservoir, an eighty foot long intake canal and a twenty-five foot long tailrace. [Id.]. FERC noted in its Order that the reservoir is "filled to near capacity" with sediment. [Id.]. The Order explained that surrender would proceed in three stages. [Id., at 7]. First, sediment would be removed and the powerhouse would be dismantled and demolished. [Id.; Doc. 7-2, at 2]. The second stage involved the demolition of the dam. [Doc. 2-3, at 7]. Work on these two stages was set to begin in January 2010, although sediment removal was to begin earlier. [Doc. 2, at 4; Doc. 7-2, at 2]. The third stage required revegetation. [Doc. 2-3, at 7].

The Surrender Order explained the procedural history leading up to FERC's decision. In May 2004, Duke filed an application to surrender the license to operate the Dillsboro Project. [Id., at 5]. The application contained notice that the surrender would include the removal of the powerhouse and

---

[3]The parties do not dispute the facts surrounding the issue of jurisdiction. [Doc. 8, at 6]; [Doc. 19, at 1-5].

dam.  [Id.].  Public notice of that surrender application was issued in June 2004.  [Id.].  The County intervened in the proceedings before FERC.  [Id., at 5-7].  It argued that the Dillsboro Project should be re-licensed to the County or that title should be transferred to the County and that Duke should pay for off-site river restoration in lieu of removing the dam. [Id., at 13].  FERC noted that a licensee such as Duke cannot be required to retain or renew the license and FERC cannot compel a licensee such as Duke to make a transfer.  [Id.].  FERC thus rejected the County's eminent domain/condemnation arguments.  After consideration of the environmental implications and the positions of intervening parties, FERC concluded:

> Although removal of the Dillsboro Project will have short-term environmental impacts and result in a loss of 0.225 MW of capacity, ... this action will result in greater upstream and downstream fish movement, wider distribution of Appalachian elktoe mussels, as well as improvement of recreational opportunities in the Tuckasegee River.  For these reasons, surrender of the Dillsboro Project, with the requirements adopted herein, will benefit environmental resources in the Tuckasegee River, and is in the public interest.

[Doc. 2-3, at 20].  FERC noted that its Surrender Order was "a final agency action" and provided notice of the time within which to seek a rehearing.  [Id., at 27].  The Surrender Order also provides that FERC may modify the conditions of surrender. [Id.].

The County timely filed a request for rehearing. [Doc. 2-4, at 1]. In considering that request, FERC noted, as to its Surrender Order, that

> [b]ased on the record in the Dillsboro surrender proceeding, we concluded that removal of the Dillsboro Project would benefit environmental resources in the Tuckasegee River and would be in the public interest. ... The order requires Duke to remove the dam and accumulated sediment during low [water] flows, and to complete removal of the dam and powerhouse and site monitoring within three years of the order's issuance date. Removal is to be accomplished in a manner that adequately protects the endangered Appalachian elktoe mussel and minimizes the downstream transport of sediments. The order also requires Duke to construct a new public boat launch and parking area.

[Id., at 4].

FERC then addressed the County's request for rehearing on issues related to water quality certification, environmental analysis, competition for the site,[4] failure to apply the proper standard, sediment removal, timing of the project removal, completion of the removal, and other issues. [Id., 4-29]. After consideration of the County's grounds, the request for a rehearing was denied. [Id., at 29]. The Order clarified that the removal of the project facilities must be completed by July 19, 2010 and all post-removal monitoring must be completed by July 19, 2012. [Id., at 31].

---

[4]The County argued that FERC had precluded other entities such as itself from applying for a license to continue operation of the Project as part of an overall development plan. [Doc. 2-4, at 21].

"On August 12, 2008, [the County] filed a motion requesting a stay of all approvals and activities associated with the project's removal, pending the completion of judicial and administrative proceedings." [Doc. 2-5, at 1]. On September 18, 2008, FERC denied the stay request finding that "the public interest would be best served by allowing Duke to move forward with surrender and dam removal activities without delay." [Id.].

Duke proceeded to apply for permits from the County which were necessary for the sediment removal portion of the project. [Doc. 7-2, at 2]. The County refused to act on the permits resulting in the filing of a civil lawsuit in state court by Duke against the County. [Id.]. On March 23, 2009, Hon. Laura J. Bridges granted Duke's requests and ordered the County to process and issue the permits necessary for the sediment removal operations. [Id.; Doc. 7-3]. Judge Bridges specifically held:

> Pursuant to N.C.Gen.Stat. §1-253, *et. seq.*, the Court hereby declares that, due to the preemptive nature of the Federal Power Act ("FPA"), [the County is] without authority to deny [Duke] the Land Development Compliance Permit or Floodplain Development Permit referenced above, or to require [Duke] to seek and obtain other local permits affecting the Dillsboro Reservoir sediment removal operations, inasmuch as the FERC's Orders with respect to sediment removal were issued pursuant to the FPA.

[Id., at 2]. After this Order, the County issued the permits. [Doc. 7-2, at 3].

Pursuant to the provision of the Surrender Order which allows modification, Duke filed on May 29, 2009 a request with FERC to expand the boundary around the Dillsboro Reservoir to assist in its sediment removal. [Doc. 20-2]. The land which would be encompassed, approximately eleven acres, is owned by Duke. [Id.]. In the state court complaint removed here, the County seeks to condemn the Dillsboro Project as well as this eleven acre parcel, which it claims has never been subject to FERC's authority. [Doc. 1-2, at 6-7; Doc. 19, at 4]. It is undisputed that Duke's request to expand the boundaries remains pending with FERC. [Doc. 19, at 4].

On June 8, 2009, the County voted to adopt a plan for the Dillsboro Heritage Park. [Doc. 1-2, at 5-6]. The Dillsboro Dam and Powerhouse were included in this park as was the eleven acre parcel. [Id., at 6-8]. At the June 8, 2009 meeting, the County also voted to condemn the Dillsboro Dam and Powerhouse and the eleven acre parcel. [Id., at 6].

Duke applied for a Land Development Compliance Permit in anticipation of the January 2010 dismantling and demolition of the Powerhouse. [Id.]. On August 5, 2009, the County refused to issue the permit claiming that it would interfere with the Dillsboro Heritage Park Plan. [Doc. 7-2, at 6]. As a result, Duke filed a second lawsuit against the County to compel the processing and

issuance of the necessary permits and seeking a declaration that the County may not refuse to issue the same and may not interfere with the removal of the Dillsboro Project. [Doc. 7-2, at 3-4; Doc. 21-5].  Duke also alleged in that action that the County is attempting to stall the removal of the dam and powerhouse in order to have them included in the Dillsboro Heritage Park Plan; *i.e.*, to condemn the parcel. [Id., at 7-8].  The same claims have been asserted in Duke's counterclaim in this action. [Doc. 6, at 22].

At an undisclosed point in time, the County filed a petition for judicial review of the Surrender Order and the order denying a rehearing with the D.C. Circuit. [Doc. 2, at 4].  Duke is a party to the petition for review and has made filings in the appellate proceeding. [Doc. 19, at 3; Doc. 11-2, at 4].  On July 27, 2009, the County submitted its brief in that proceeding and oral argument was scheduled fo October 9, 2009. [Doc. 24-6, at 1; Doc. 11-12, at 4].  In its brief, the County noted that it was not seeking review of the order denying a request for a stay of all demolition and removal activities.  [Id., at 4-5].  The parties do not dispute that the petition for review remains pending before the D.C. Circuit.

## DISCUSSION

**Subject matter jurisdiction.**

Duke's removal of the action to this Court is based on its argument that the FPA completely preempts the County's state law claims for condemnation. [Doc. 1]. Thus, it argues, federal question jurisdiction exists. [Id.].

Section 313(b) of the FPA provides that FERC orders, including licensing and surrender decisions, may be reviewed only in the United States Court of Appeals for any circuit in which the licensee is located or in the United States Court of Appeals for the District of Columbia (D.C. Circuit). 16 U.S.C. §825l(b)[5]; *noted in* Escondido Mut. Water Co. v. La Jolla, Rincon, San Pasqual, Pauma, and Pala Bands of Mission Indians, 466 U.S. 765, 777 n.19, 104 S.Ct. 2105, 80 L.Ed.2d 753 (1984). In this case, the County chose to seek review of FERC's rulings in the D.C. Circuit.

> Taxpayers of Tacoma[6] involved a FERC license to the City of Tacoma to construct a power facility on the Cowlitz River, which FERC granted despite Washington State's contention that the

_____

[5]"Any party to a proceeding ... aggrieved by an order issued by [FERC] in such proceeding may obtain a review of such in the United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates is located ... or in the United States Court of Appeals for the District of Columbia, by filing in such court ... a written petition. ... Upon the filing of such petition such court shall have jurisdiction, which ... shall be exclusive, to affirm, modify or set aside such order in whole or in part."

[6]City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958).

project could not be built without its approval.  In a separate proceeding, the State appealed FERC's licensing decision to [the Ninth Circuit], which ... affirmed [FERC's decision] and the Supreme Court denied writ of *certiorari*.  At the same time, the City of Tacoma filed a state court action seeking a declaratory judgment that its issue of revenue bonds in connection with the building of the project was valid.  After extensive state court proceedings, the Washington Supreme Court held that the FERC license could not give the City of Tacoma power to condemn state land necessary for the project without specific state legislation.

The United States Supreme Court accepted *certiorari* and framed the question as to whether FERC's license gave the City of Tacoma federal eminent domain power to take state land necessary for the construction of the project without state legislation conferring such authority.  Relying on §825l(b), the Supreme Court held:

> This statute is written in simple words of plain meaning and leaves no room to doubt the congressional purpose and intent.  It can hardly be doubted that congress, acting within its constitutional powers, may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had. ...  So acting, Congress in [§825l(b)] prescribed the specific, complete and exclusive mode for judicial review of [FERC's] orders. ...  It thereby necessarily precluded *de novo* litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review.  Hence, upon judicial review of [FERC's] order, all objections to the order, to the license it directs to be issued, and to the legal competence of the licensee to execute its terms, must be made in the Court of Appeals or not at all.
>
> ...
> [E]ven if it might be thought that this issue was not

> raised in the Court of Appeals, it cannot be doubted
> that it could and should have been, for that was the
> court to which Congress had given "exclusive
> jurisdiction to affirm, modify, or set aside" the [FERC]
> Commission's order. And the State may not reserve
> the point for another round of piecemeal litigation.

Skokomish Indian Tribe v. United States, 332 F.3d 551, 559 (9th Cir. 2003),

*quoting* Taxpayers of Tacoma, 357 U.S. at 335-37, 339 (other citations

omitted).

This Court does not have subject matter jurisdiction over the claims

raised by the County in its state court action which was removed to this Court.

The only court with jurisdiction to hear those claims is the D.C. Circuit, before

which the County's claims are presently pending. As a result, the removal of

this action to this Court was improper. Indeed, in their briefs to this Court the

parties concede that subject matter jurisdiction does not lie.

Notwithstanding its concession, Duke argues that this Court may

dismiss the County's claims, or in the alternative, remand them, while

retaining jurisdiction over its counterclaim. In the counterclaim, Duke seeks

a declaratory judgment that the County may not bring eminent

domain/condemnation proceedings, may not refuse to issue the permits

necessary for the demolition of the Dillsboro Dam and Powerhouse and may

not otherwise interfere with the surrender of the Dillsboro Project. The same

claims, however, are pending in the state court action which Duke brought against the County. [Doc. 21-5]. In fact, the claims which Duke now argues are preemptively federal claims have been alleged by Duke in the state court action. Duke nonetheless argues here that the FPA completely preempts state law, thus, requiring this Court to retain its counterclaim. In making this argument, Duke ignores the proceedings pending before the D.C. Circuit and the language of §825l(b) providing that the D.C. Circuit has "exclusive" jurisdiction.

Duke also makes the argument that it must bring its counterclaim here because it is not an "aggrieved" party disputing FERC's rulings before the D.C. Circuit. It does not deny that it has intervened and made filings in the petition for review before that Circuit. Nor does it dispute its ability to argue in the D.C. Circuit against the County's position that FERC should have relicensed the Dillsboro Project to it. Indeed, FERC remains capable of modifying the Surrender Order based on review by the D.C. Circuit, modifications which most certainly could impact Duke and render it "aggrieved." As the Supreme Court stated in <u>Taxpayers of Tacoma</u>,

> [E]ven if it might be thought that this issue was not raised in the Court of Appeals, it cannot be doubted that it could and should have been, for that was the court to which Congress ha[s] given "exclusive jurisdiction to affirm, modify, or set aside" the [FERC]

Commission's order.  And [Duke] may not reserve the point for another round of piecemeal litigation.

Taxpayers of Tacoma, 357 U.S. at 339.

Despite the plain language of the Supreme Court in interpreting §825l(b), Duke persists in its argument that the FPA completely preempts state law thus providing subject matter jurisdiction over its counterclaim.

> The doctrine of complete preemption provides a corollary to the well-pleaded complaint rule.  This doctrine recognizes that some federal laws evince such a strong federal interest that, when they apply to the facts underpinning the plaintiff's state-law claim, they convert that claim into one arising under federal law.  Because complete preemption transforms a state-law claim into one arising under federal law, "the well pleaded complaint rule is satisfied" even though the complainant never intended to raise an issue of federal law.  However, "the *sine qua non* of complete preemption is a preexisting federal cause of action that can be brought in the district courts. ... Congress's allocation of authority to an agency and away from district courts defeats a complete preemption claim. ..."

In re Blackwater, 460 F.3d at 584.

Such is the case at hand.  "Here, [Duke] does not explicitly seek to modify, rescind, or set aside FERC's [surrender] order.  Rather, [Duke] artfully pleads its claims based on [the FPA and declaratory judgment] as a basis for the district court's jurisdiction.  However, [Duke's] claims flow directly from FERC's [surrender] order."  Skokomish Indian Tribe, 332 F.3d at 560. Congress allocated the authority under the FPA to FERC in the first instance

and then to courts of appeal for judicial review.  Id. ("[A]ny dispute over FERC's decision belongs first before FERC and then the circuit courts, not the district courts.").  Indeed, Congress allocated all authority "away from district courts" and thus, that allocation "defeats [Duke's] complete preemption claim." In re Blackwater, 460 F.3d at 584; *accord*, Lontz v. Tharp, 413 F.3d 435, 441 (4th Cir. 2005) (noting the Supreme Court has found complete preemption in only three statutes, the National Bank Act, the Employee Retirement Income Security Act and the Labor Management Relations Act).  In fact, to the extent the FPA divests a state court of original jurisdiction, it "also divests federal [district] courts of such jurisdiction.  Id., at 442.

Moreover, "preemption arguments 'are questions that must be addressed in the first instance by the state court in which [the County] filed [its] claims.' Removal statutes do not create jurisdiction.  They are instead a mechanism to enable federal courts to hear the cases that are already within their original jurisdiction." Lontz, 413 F.3d at 443, *quoting* Caterpillar, Inc. v. Williams, 482 U.S. 386, 398 n.13, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (other citations omitted).

Thus, any foray into the law of preemption is unnecessary at best and inappropriate at worst.  "[A] challenger may not collaterally attack the validity

of a prior FERC order in a subsequent proceeding.  Moreover, the prohibition

on collateral attacks applies whether the collateral action is brought in state

court or federal court."    Williams Natural Gas Co. v. City of Oklahoma City,

890 F.2d 255, 262, 264 (10th Cir. 1989) (comparing the National Gas Act to the

FPA and refusing to reach preemption issue because it "could have and

should have been raised before FERC.") (internal citations omitted);

Skokomish Indian Tribe, 332 F.3d at 558 ("Any collateral attacks on FERC's

licensing orders are also governed by §825l(b)."); Merritt v. Shuttle, Inc., 245

F.3d 182, 187 (2nd Cir. 2001) (statutes which "vest judicial review of

administrative orders exclusively in the courts of appeals also preclude district

courts from hearing claims that are 'inescapably intertwined' with review of

such orders.").   The County's eminent domain/condemnation action is an

attempt to avoid FERC's order of surrender and demolition of the dam and

powerhouse.   In fact, the County's brief on appeal before the D.C. Circuit

asserts as error the fact that FERC denied its application for relicensing of the

dam. [Doc. 24-6, at 26 ("The trigger of the dispute here lies in the FERC's

decision to dismiss an application for *relicensing* the Dillsboro Project ... and

to authorize instead the *surrender* of the license and the removal[.]")].

The very issue involved in this action, whether the Project must be

dismantled and demolished, is pending before the D.C. Circuit in a proceeding in which Duke and the County are both parties. [Doc. 24-6]. "[T]he FPA governs review of all disputes concerning the licensing of hydroelectric projects, and ... [the County's] action [is] at its core an attempt to restrain the licensing procedures authorized by FERC." Skokomish Indian Tribe, 332 F.3d at 559.

Duke's counterclaim, like the County's claims, is an impermissible collateral proceeding involving FERC's Surrender Order and licensing decisions and must be brought "in the Court of Appeals or not at all." Skokomish Indian Tribe, 332 F.3d at 559-60. Duke's preemption arguments "could have and should have [been] raised" before FERC and advanced in the D.C. Circuit. Williams Natural Gas Co., 890 F.2d at 264. Thus, §825l(b) "necessarily precludes *de novo* litigation between the parties of *all issues inhering in the controversy*." City of Tacoma, 357 U.S. at 336 (emphasis provided).[7]

> By its express language, the [Federal Power] Act provides *exclusive* jurisdiction for the Courts of Appeals to review and make

---

[7]The same reasoning applies to the County's argument that because Duke has been allowed to surrender its license, there is no license and therefore no jurisdiction before FERC. There is no dispute that at all times Duke has been, and continues to be, under the regulatory supervision of FERC. Moreover, this is an issue which should be submitted, if at all, to the D.C. Circuit.

substantive modifications to FERC licensing orders.  Since it is a basic canon of statutory construction that Congress intended to give its words their ordinary meaning, we are obligated to assume that when congress said exclusive it meant exactly that.  Given Congress's careful choice of words, there can be little room for argument over whether the statutory scheme vests sole jurisdiction over questions arising under the FERC licenses in the Courts of Appeals. ...  Exclusive review provisions avoid the duplication of district and appellate review which crowds the timely and efficient disposition of administrative decisions.

California Save Our Streams Council, Inc. v. Yeutter, 887 F.2d 908, 910-11 (9th Cir. 1989) (citations omitted).[8]

This Court does not decide whether complete preemption applies in this case to the County's claims or Duke's counterclaim because "such an inquiry

_____

[8]The cases cited by Duke in support of its argument that this Court may find preemption are inapposite.  First Iowa Hydro-Electric Coop. v. FPC, 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143 (1946) involved the review by the Supreme Court of the decision of the Court of Appeals for the District of Columbia to whom the case was first presented in accordance with the FPA.  Likewise, California v. FERC, 495 U.S. 490, 110 S.Ct. 2024, 109 L.Ed.2d 474 (1990), Albany Engineering corp. v. FERC, 548 F.3d 1071 (C.A.D.C. 2009), and  Commonwealth of Pennsylvania v. FERC, 868 F.2d 592 (3rd Cir. 1989), involved petitions for review of FERC orders presented in the first instance to the appropriate Courts of Appeals.  State of North Carolina v. City of Virginia Beach, Va., 882 F.Supp. 77 (E.D.N.C. 1995), vacated as moot 1998 WL 34069374 (4th Cir. 1998), did not involve the review of a FERC order; instead, an application was pending before FERC which intervened in the action to assert federal preemption.  Sayles Hydro Associates v. Maughan, 985 F.2d 451 (9th Cir. 1993), did not involve the review of a FERC decision but of a state's requirement for a permit.  Same, Town of Springfield, Vt. v. State of Vt. Environmental Bd., 521 F.Supp. 243 (D.C.Vt. 1981).  Town of Springfield, Vt. v. McCarren, 549 F.Supp. 1134 (D.C.Vt. 1982), affirmed 722 F.2d 728 (2nd Cir. 1983), certiorari denied 464 U.S. 942, 104 S.Ct. 360, 78 L.Ed.2d 322 (1983), involved an order by a state agency not to commence site preparation without a certificate of public good; FERC had not yet issued a license.  Rivers Elec. Co., Inc. v. 4.6 Acres of Land Located in Town of Catskill, County of Greene, 731 F.Supp. 83 (N.D.N.Y. 1990), actually held that the only means to challenge a license issued by FERC was to petition the circuit court of appeals.

[is] both unnecessary to [the] jurisdictional analysis and unreachable on the merits once the court [has] determined that removal jurisdiction [is] absent." In re Blackwater, 460 F.3d at 588. The Court finds that removal was improper and that it does not have subject matter jurisdiction over the County's claims or Duke's counterclaims.

**Remand to state court.**

Duke removed the state court action to this Court on the ground that the FPA completely preempts state laws of condemnation when a FERC licensed hydroelectric power plant is at issue. This Court has found that there is no subject matter jurisdiction because the only court with jurisdiction to review the FERC decision and matters inherently involved therewith is the D.C. Circuit. Thus, despite the parties' best efforts to avoid the issue, the only remaining issue before this Court is whether it is required to remand this action to state court.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a case removed from state court], the case *shall* be remanded." 28 U.S.C. §1447(c) (emphasis provided). Having found that there is no subject matter jurisdiction, this Court is mandated to remand

the action to state court.

> This mandate is so clear that, once a district court has found that it lacks subject matter jurisdiction in a removed case, no other fact-finding, legal analysis, or exercise of judicial discretion is necessary in order to follow the congressional directive; the decision to remand a case to remedy a lack of subject matter jurisdiction is purely ministerial.

In re Blackwater, 460 F.3d at 589 (citations omitted); In re Mills, 287 Fed.Appx. 273, 277 (4th Cir. 2008); Skokomish Indian Tribe, 332 F.3d at 562 (district court erred by granting summary judgment when it found that the claims were impermissible collateral attacks on FERC's order).  The Court thus remands the case in its present posture thereby avoiding any preclusive effects.  In re Blackwater, 460 F.3d at 590;  Palmer v. City Nat. Bank of West Virginia, 498 F.3d 236, 243 (4th Cir. 2007).  In so remanding, however, the Court does not make a determination that the Jackson County Superior Court has subject matter jurisdiction.


**ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion to Remand [Doc. 11] is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Duke Energy Carolinas' (1) Motion to Dismiss all Claims by Jackson County (County) for Lack of Subject Matter

Jurisdiction; and (2) Motion for Summary Judgment with Respect to its First

Claim for Relief (Declaratory Judgment) [Doc. 7] are hereby **DENIED** as moot.

Signed: November 3, 2009

Martin Reidinger
United States District Judge